**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **ARMAND SVALDE,**[1] | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 15-2093** |
| **v.** | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |

************

**MEMORANDUM OPINION GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiff Armand Svalde (or Armands Svalbe) seeks judicial review under 42 U.S.C.

§ 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the

"Commissioner") denying his application for disability insurance benefits ("DIB") under Title II

of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF

No. 10) and Defendant's Motion for Summary Judgment (ECF No. 11).[2] Plaintiff contends that

the administrative record does not contain substantial evidence to support the Commissioner's

decision that he is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that

follow, Defendant's Motion for Summary Judgment (ECF No. 11) is **GRANTED**, Plaintiff's

---

[1] Although Plaintiff's name appears on the docket and in the complaint (ECF No. 1) as "Armand
Svalde," his name appears throughout the administrative transcript (ECF No. 7) as "Armands
Svalbe."

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as
a procedural means to place the district court in position to fulfill its appellate function, not as a
device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards."
*Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary
judgment accompanied by a remand to the Commissioner results in a judgment under sentence
four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

Motion for Summary Judgment (ECF No. 10) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

# I

## Background

Plaintiff was born in 1980, has a high-school education, and previously worked as a driver/courier, cashier, cashier/checker, stock clerk, and sales attendant.  R. at 21, 143, 147. Plaintiff filed an application for DIB on February 9, 2012, alleging disability beginning on November 1, 2011, due to Crohn's disease, diabetes, hepatitis C, depression, ADHD, anxiety, hypercholesterolemia, and psoriasis.  R. at 127-28, 143, 146.  The Commissioner denied Plaintiff's application initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 46-71, 74-81.  On February 6, 2014, ALJ Tom Duann held a hearing at which Plaintiff and a vocational expert ("VE") testified.  R. at 28-45.  On February 24, 2014, ALJ Irving A. Pianin issued a decision finding Plaintiff not disabled from the alleged onset date of disability of November 1, 2011, through the date of the decision. R. at 8-27.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on May 18, 2015.  R. at 2-7.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On July 16, 2015, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

The Court reviews here and in Part VI below Plaintiff's relevant medical evidence.

**A.      Cheryl H. Jaworski, M.D.**

Cheryl H. Jaworski, M.D., had been Plaintiff's treating psychiatrist since May 13, 2011. R. at 349.  On May 13, 2011, Dr. Jaworski's diagnoses included a GAF score of 55.[3]  R. at 286. On December 20, 2011, Plaintiff reported that he was spending most of his day programming music for a friend and that his medications "definitely allow him to concentrate much better."  R. at 299.  On January 19, 2012, Plaintiff reported that he was "doing better" and that his "anxiety is much better" and "not really a problem right now."  R. at 300, 320.  On March 1, 2012, Plaintiff reportedly continued to have issues with fatigue and felt that he could not work a full day.  R. at 301, 321.  On March 16, 2012, Plaintiff reported that his mood had been worsening in the previous two weeks, and he was feeling sadder and more anxious in general.  R. at 302, 322. He was not doing much at home besides lying in bed and watching television.  R. at 302, 322.

On April 13, 2012, Plaintiff reported that his symptoms of depression were "definitely better" but that his anxiety was worse.  R. at 323.  He was sleeping about 10 hours per day.  R. at 323.  His motivation and energy were a little better, and he was a little less unstable.  R. at 323. Plaintiff did not believe that a decrease in his medication dosage had worsened his focus and

---

[3]  The GAF, or global assessment of functioning, scale rates psychological, social, and occupational functioning; it is divided into ten ranges of functioning.  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000) [hereinafter *DSM-IV-TR*].  A GAF rating between 51 and 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  *Id.* at 34.  The current edition of the manual eliminated the GAF scale for reasons including "its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice."  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013).

attention much up to that point.  R. at 323.  On May 11, 2012, Plaintiff reported that his anxiety had decreased from his last visit, but he continued "to feel anxious about everything all the time."  R. at 324.  His depression was under control, and his motivation was "a little improved."  R. at 324.  Plaintiff felt that his focus and attention were "sort of OK."  R. at 324.

On June 8, 2012, Plaintiff reported that his anxiety was "somewhat better" since an increase in his medication dosage.  R. at 325.  His anxiety was "still there, but there's improvement."  R. at 325.  He denied having depression, and his energy, motivation, and irritability were better than before.  R. at 325.  His attention and focus were "a little bit" better on his medication regimen, but the "effect still doesn't last much more than 6 hours."  R. at 325.

On June 28, 2012, Plaintiff reported that his "anxiety now sometimes spikes to 7/10 'for no reason.'"  R. at 325.  He was "more aware of some sadness again," and he described his anxiety as generalized.  R. at 326.

On July 24, 2012, Plaintiff reported no problems with sadness and that his anxiety was "low-level."  R. at 327.  On August 21, 2012, Plaintiff reported that the effects of his medications lasted six or seven hours.  R. at 328.  On September 18, 2012, Plaintiff reported that his focus and attention were "pretty good for the bulk of the day."  R. at 329, 353.  On November 2, 2012, Plaintiff reported that his "general mood has been fine" and that his focus and attention were "pretty good."  R. at 355.

On January 4, 2013, Plaintiff reported that his mood was "pretty good" and that his overall mood had been fine.  R. at 356.  Plaintiff's depression and anxiety symptoms were "under pretty good control," and his attention and focus were good with his current stimulants.  R. at 356.  His energy level was better, and his motivation was "OK."  R. at 356.  Plaintiff's orientation, judgment and insight, and recent and remote memory were grossly intact.  R. at 356.

He also reported improvement with his current treatment program.  R. at 357.  Dr. Jaworski noted that Plaintiff was seeing a psychotherapist at the Community Counseling Center to work on his OCD-related issues, which Plaintiff said was helpful.  R. at 357.

On April 5, 2013, Plaintiff reported being a little more anxious and more depressed since the previous visit.  R. at 358.  Plaintiff also reported that his mood had not been as good over the last two months or so and went "up and down."  R. at 358.  Plaintiff was not able to find any work and "kind of 'gave up' after a while."  R. at 358.  His mood was more anxious and sad, "but not every day."  R. at 358.  Plaintiff also reported that his focus and attention were best in the morning with his stimulants, but he admitted that he did not have much structure in his day, exacerbating his problems.  R. at 359.  He tried to do household chores, but was inconsistent because of "feeling crappy sometimes" and not being physically up to it.  R. at 359.

The ALJ reviewed in his decision Dr. Jaworski's opinion on April 8, 2013:

> On April 8, 2013, Dr. Jaworski opined the following: [Plaintiff] has deficiencies of concentration, persistence, or pace, that result in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); [Plaintiff] has repeated episodes of deterioration or decompensation in work or work-like setting [sic] that cause [Plaintiff] to withdraw from the situation or experience exacerbation of signs and symptoms (which may include deterioration of adaptive functioning); and [Plaintiff] has mostly moderate and marked limitations regarding his ability to work.

R. at 20; *see* R. at 349-52.  According to Dr. Jaworski, Plaintiff was markedly limited in the ability to (1) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (2) interact appropriately with the general public; and to (3) travel in unfamiliar places or use public transportation.  R. at 351-52.  Dr. Jaworski explained her opinion: "These ratings are based on [patient's] report of his function during medication evaluation [and] follow-up [appointments].  I have not observed his behavior directly in the

workplace, nor do I have access to evaluations of his performance by his previous employers." R. at 352.

On June 7, 2013, Plaintiff reported that "maybe the depression is a little better." R. at 360. He noted fewer days of sadness than before, and he seemed to have less anxiety. R. at 360. His energy was still low, but his motivation had improved; his daily activities were not as difficult as before. R. at 360. Plaintiff also reported that he had been "working on his music a lot" and that he "felt more creative lately." R. at 361. He had not followed through, however, with volunteer jobs at the animal shelter and Meals on Wheels because "it's hard to make myself do it." R. at 361. On May 10, 2013, Plaintiff reported little relief from his symptoms of depression and anxiety. R. at 362.

On July 12, 2013, Plaintiff reported that his mood was "OK most of the time." R. at 364. His energy was "a little better," and his motivation was "OK now." R. at 364. Dr. Jaworski noted that Plaintiff's attention and concentration were intact during the session. R. at 364. Plaintiff also reported that his wife had added some structure to his daily routine, giving him specific chores for specific days, which helped him stay on track and be more productive. R. at 365.

On August 23, 2013, Plaintiff reported that he was "doing OK" and that his "mood has been OK most of the time." R. at 366. He denied having depression and reported that his anxiety was "actually a little less than when last seen." R. at 366. Plaintiff's motivation was "OK," and his focus and attention were "OK for most of the day" with his current medications. R. at 366. He continued to have more structure in his daily routine with his wife's help. R. at 367.

On November 14, 2013, Plaintiff reported that he thought "things have been pretty stable." R. at 368. His mood continued to be fine "more days than not." R. at 368. He denied having depression and reported that his anxiety remained unchanged but had improved. R. at 368. His energy, motivation, attention, and focus remained the same from his previous visit. R. at 368. Dr. Jaworksi noted that Plaintiff's attention and concentration were good during the appointment, but that his judgment and insight were only fair. R. at 368. Plaintiff described his symptoms as being in good control while on his current medication regimen. R. at 369. Plaintiff was changing the frequency of his visits to his psychotherapist from every two to three weeks to every month because he felt "things are stabilizing" and "we are running out of stuff to talk about." R. at 369.

B.     **State Agency Medical Consultants**

On May 17, 2012, a state agency consultant, Lawrence Annis, Ph.D., using the psychiatric review technique ("PRT") under 20 C.F.R. § 404.1520a, evaluated Plaintiff's mental impairments under Listings 12.02 and 12.04 relating to organic mental disorders and affective disorders (R. at 49-50). *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.02, 12.04. Dr. Annis opined that, under paragraph B of the applicable listing, Plaintiff's mental impairments caused him to experience (1) moderate restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no repeated episodes of decompensation of extended duration. R. at 50. Dr. Annis did not find evidence to establish the presence of the criteria under paragraph C of the applicable listing. R. at 50. Dr. Annis thus assessed Plaintiff's mental residual functional capacity ("RFC") (R. at 52-55) and opined that he was moderately limited in his ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and

concentration for extended periods; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) interact appropriately with the general public; (5) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; (6) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and to (7) respond appropriately to changes in the work setting.   Plaintiff otherwise was not significantly limited.  R. at 53-54.

On June 20, 2012, another state agency consultant, A. Serpick, M.D., assessed Plaintiff's physical RFC.  R. at 51-52.  Dr. Serpick opined that Plaintiff could (1) lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 52.  Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations.  R. at 52.  On November 30, 2012, another state agency consultant, W. Hakkarinen, M.D., expressed the same opinion about Plaintiff's physical RFC.  R. at 64-65.

On December 21, 2012, another state agency consultant, Maurice Prout, Ph.D., again used the PRT to evaluate Plaintiff's mental impairments under Listings 12.02 and 12.04.  R. at 62-63.  Dr. Prout opined that, under paragraph B of the applicable listing, Plaintiff's mental impairments caused him to experience (1) moderate restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no episodes of decompensation of extended duration.  R. at 62-63.  Dr. Prout did not find evidence to establish the presence of the criteria under paragraph C of the applicable listing.  R. at 63.  Dr. Prout thus assessed Plaintiff's

mental RFC (R. at 65-68) and opined that he was moderately limited in his ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) interact appropriately with the general public; (5) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; (6) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and to (7) respond appropriately to changes in the work setting.   Plaintiff otherwise was not significantly limited.  R. at 66-67.

Both Drs. Annis and Prout expressed the same opinions about Plaintiff's sustained concentration and persistence limitations:

> [Plaintiff] should be mentally able to sustain concentration and persist at simple and repetitive tasks within physical tolerances and skill levels for at least two hours at a time through an 8 hour workday.  Additional supervision may be required when working on multi-step assignments.  There may be occasions during which [Plaintiff] experiences some decrease in concentration, but he can attend to and complete simple tasks in routine settings as needed.  [Plaintiff] is mentally able to understand and follow a schedule.  Lack of desire or motivation may contribute to reduced performance in this area.

R. at 53, 66.  They further opined that Plaintiff

> should be mentally able to perform simple, routine, repetitive tasks in settings with low social demands and which are not fast paced or quota driven.  Functional restrictions beyond levels assessed above are not considered attributable to [Plaintiff's] mental condition, as reflected in the objective medical evidence in file.  He may be mentally able to perform tasks at higher levels despite the moderate limitations noted above.

R. at 54, 67.

**C.      Community Counseling Center**

At his initial appointment at the Community Counseling Center on September 18, 2012, Plaintiff's psychotherapist diagnosed him with obsessive-compulsive disorder and a GAF rating of 62.[4]  R. at 345.  Progress notes from November 6, 2012, to November 7, 2013, indicate that, although he appeared depressed, Plaintiff had no problems with memory or his attention span. R. at 370-81.  There was no evidence of psychosis or impaired judgment.  R. at 370-81.  During this period, Plaintiff's psychological symptoms somewhat improved, and his progress was fair to good.  R. at 370-81.

**D.      Hearing Testimony**

**1.      Plaintiff's Testimony**

The ALJ reviewed Plaintiff's testimony in his decision:

> At the hearing, [Plaintiff] complained of reduced concentration, persistence, and pace.  He also complained of depression, diabetes mellitus (DM), and fatigue.  [Plaintiff] testified that he is not reliable.  He testified that he takes certain medications for his alleged mental impairments, and these medications help somewhat.  [Plaintiff] testified that he has not had any hospitalizations or emergency room visits for his alleged mental impairments, and he has not seen a therapist since last year.  He also testified that he is currently not working, and he last worked in November 2011.

R. at 17; *see* R. at 32-42.

**2.      VE Testimony**

The VE testified that a hypothetical individual with Plaintiff's same age, education, and work experience with the RFC outlined below in Part III could perform Plaintiff's past relevant

---

[4] A GAF rating between 61 and 70 indicates that the individual has "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) [or] some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but [is] generally functioning pretty well [and] has some meaningful interpersonal relationships." *DSM-IV-TR*, *supra* note 3, at 34.

work as a stock clerk and also could perform the unskilled, medium[5] jobs of packager or cleaner. R. at 21, 43-44.   An individual unable to complete a normal workday and to interact appropriately with co-workers, supervisors, or the public would not be able to perform any jobs. R. at 44.  If Plaintiff's testimony that he would not be able to focus and concentrate on the task at hand and would not be reliable in attending work were credible, he could not perform any full-time work.  R. at 44.  According to the VE, her testimony was consistent with the *Dictionary of Occupational Titles*.[6]  R. at 44.

## III

## Summary of ALJ's Decision

On February 24, 2014, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of November 1, 2011; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was able to perform his past relevant work as a stock clerk; and (5) could perform other work in the national economy, such as a packer or cleaner.  R. at 13-23.

---

[5] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  *Id.* § 404.1567(c).

[6] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs."  *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. § 404.1566(d)(1).   "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption."  *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

The ALJ thus found that he was not disabled from November 1, 2011, through the date of the

decision.  R. at 23.

> In so finding, the ALJ found that, with regard to concentration, persistence, or pace,
>
> [Plaintiff] has moderate difficulties.  In a function report from March 21, 2012, [Plaintiff] reported that he has difficulty focusing on tasks; he needs reminders to take care of his personal needs and grooming; he needs reminders to take his medicine; he can pay attention for 5 minutes; he does not finish what he starts; he follows written and spoken instructions poorly; he does not handle stress well at all; and he handles changes in his routine very poorly [R. at 154-61].  However, [Plaintiff] also reported that he drives; he goes shopping in stores; he is able to pay bills; he is able to count change; he is able to handle a savings account; he is able to use a checkbook/money orders; and he has not noticed any unusual behavior or fears [R. at 154-161].  Furthermore, [Plaintiff] testified at the hearing that he plays the bass guitar; he writes music; he uses the computer; he checks his email; he uses Facebook; he watches television; he cleans; and he handles his own money [R. at 32-42].

R. at 15.

> The ALJ found that Plaintiff had the RFC
>
> to perform medium work as defined in 20 CFR 404.1567(c), except for the following: [Plaintiff] can have only occasional contact with coworkers, supervisors, and/or the general public, due to limitations in social functioning; and [Plaintiff] can perform only simple, routine, repetitive tasks, due to limitations in concentration, persistence, or pace.

R. at 16.

The ALJ also considered Plaintiff's credibility and found that his "medically

determinable impairments could reasonably be expected to cause the alleged symptoms;

however, [his] statements concerning the intensity, persistence, and limiting effects of these

symptoms are not entirely credible for the reasons explained in this decision."  R. at 17.

> The ALJ gave
>
> little weight to Dr. Cheryl H. Jaworski's opinion in [R. at 349-52], because it is not supported by the evidence of record as a whole, and because it is not consistent with the evidence of record as a whole (SSR 96-6p). . . .  Dr. Cheryl H. Jaworski's opinion in [R. at 349-52] is not consistent with the progress notes from

> Dr. Cheryl H. Jaworski, [Plaintiff's] treating psychiatrist [R. at 283-307, 320-30, 353-69], and the progress notes from [Plaintiff's] therapist at the Community Counseling Center (CCC) [R. at 338-45, 370-81]. In addition, [Plaintiff] has not had any hospitalizations, emergency room visits, or crisis center visits, for his psychiatric/psychological impairments [R. at 32-42]. Furthermore, [Plaintiff] has global assessment of functioning (GAF) scores ranging from 55-62, which mean only mild/moderate symptoms [R. at 283-307, 338-45].

R. at 20.

> The ALJ also reviewed Dr. Jaworski's progress notes:

> Progress notes from Dr. Cheryl H. Jaworski, [Plaintiff's] treating psychiatrist, from August 23, 2013, indicate that [Plaintiff] was doing "okay" [R. at 366]. Furthermore, progress notes from Dr. Jaworski from November 14, 2013, indicate that "things have been pretty stable," according to [Plaintiff] [R. at 368]. Overall, the progress notes in [R. at 353-69] indicate that [Plaintiff's] mental health condition was improving, despite his "ups and downs."

R. at 18.

## IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the

regulations.  20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003).  "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further."  *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant has the burden of production and proof at steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[7]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

---

[7] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant

numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

### Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to

differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

# VI

## Discussion

Plaintiff contends that the ALJ erroneously assessed his RFC contrary to Social Security Ruling[8] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).  Pl.'s Mem. Supp. Mot. Summ. J. 3-13, ECF No. 10-1 (citing, *inter alia*, *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)).  Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of his ability to perform the physical and mental demands of work.  *Id.* at 5-6.  In particular, he contends that, although the ALJ found that he had moderate difficulties with regard to concentration, persistence, or pace, the ALJ failed to include any limitation on concentration, persistence, or pace in the RFC assessment, instead limiting Plaintiff to simple, routine, and repetitive tasks (R. at 16).  *Id.* at 6.  Plaintiff further asserts that the ALJ failed to evaluate properly the opinions of Dr. Jaworski, his treating psychiatrist.  *Id.* at 6-13.  Plaintiff also contends that substantial evidence does not support the ALJ's determination that he was capable of performing his past relevant work as a stock clerk.  *Id.* at 13-15.  For the reasons discussed below, Plaintiff's assertions are unavailing.

---

[8] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted.  20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding on all components of the Social Security Administration.  *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1).  "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law."  *Pass*, 65 F.3d at 1204 n.3.

A. **Plaintiff's Moderate Limitations in Maintaining Concentration, Persistence, or Pace**

SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC

> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. *Id.* at 637; *see Monroe v. Colvin*, 826 F.3d 176, ___, No. 15-1098, 2016 WL 3349355, at *9-10 (4th Cir. June 16, 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC

first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

Plaintiff contends that, in assessing his RFC, the ALJ failed to consider adequately his moderate difficulties in maintaining concentration, persistence, or pace, contrary to *Mascio*. Pl.'s Mem. Supp. Mot. Summ. J. 6, ECF No. 10-1.   In *Mascio*, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'"   *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). "[T]he ability to perform simple tasks differs from the ability to stay on task.   Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace."   *Id.* The court in *Mascio* remanded the case for the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC.   *Id.*   In other words, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary."   *Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015), *report and recommendation adopted* (D. Md. June 5, 2015).

"The Social Security Administration has promulgated regulations containing 'listings of physical and mental impairments which, if met, are conclusive on the issue of disability.'   A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'"   *Radford*, 734 F.3d at 291 (citation omitted); *see* 20 C.F.R. pt. 404, subpt. P, app. 1.   In addition to the five-step analysis discussed above in

Part IV and outlined in 20 C.F.R. §§ 404.1520 and 416.920, the Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments. 20 C.F.R. §§ 404.1520a, 416.920a. These regulations require application of a psychiatric review technique at the second and third steps of the five-step framework, *Schmidt v. Astrue*, 496 F.3d 833, 844 n.4 (7th Cir. 2007), and at each level of administrative review. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). This technique requires the reviewing authority to determine first whether the claimant has a "medically determinable mental impairment." *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1). If the claimant is found to have such an impairment, then the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *id.* §§ 404.1520a(b)(2), 416.920a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe" and will deny benefits. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). If the claimant's mental impairment is severe, then the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). If so, then the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's RFC. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3).

"The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas." *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (per curiam) (citing 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4)).   With regard to the four functional areas, which correspond to the paragraph B criteria of the listings for mental disorders, "[*a*]*ctivities of daily living* include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [the claimant's] grooming and hygiene, using telephones and directories, and using a post office."   20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(1).   "In the context of [the claimant's] overall situation, [the Commissioner assesses] the quality of these activities by their independence, appropriateness, effectiveness, and sustainability.   [The Commissioner] will determine the extent to which [the claimant is] capable of initiating and participating in activities independent of supervision or direction."   *Id.*   Moreover, "[*s*]*ocial functioning* refers to [the claimant's] capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals.   Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers."   *Id.* § 12.00(C)(2).   Further, "[*c*]*oncentration, persistence, or pace* refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."   *Id.* § 12.00(C)(3).   "On mental status examinations, concentration is assessed by tasks such as having [the claimant] subtract serial sevens or serial threes from 100.   In psychological tests of intelligence or memory, concentration is assessed through tasks requiring short-term memory or through tasks that must be completed within established time limits."   *Id.*   Finally, "[*e*]*pisodes of decompensation* are exacerbations or

temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." *Id.* § 12.00(C)(4). "Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." *Id.* Episodes of decompensation may be inferred from "medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode." *Id.* "The term *repeated episodes of decompensation, each of extended duration* in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id.*

Here, the ALJ found that Plaintiff "can perform only simple, routine, repetitive tasks, due to limitations in concentration, persistence, or pace." R. at 16. "[B]ecause [the ALJ] explicitly related his RFC limitation of ['simple, routine, repetitive tasks'] to [Plaintiff's] difficulties in concentration, persistence, or pace, there is no internal inconsistency in the ALJ's decision." *Geisler v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-2857, 2015 WL 4485459, at *5 (D. Md. July 21, 2015). Plaintiff's contention that remand under *Mascio* is warranted thus is unavailing.

**B.    ALJ's Consideration of Dr. Jaworski's Opinion**

Plaintiff next contends that the ALJ erred in his consideration of Dr. Jaworski's April 2013 opinion (R. at 349-52). Pl.'s Mem. Supp. Mot. Summ. J. 6-13, ECF No. 10-1. In this regard, the Fourth Circuit reiterated the following standard for considering medical opinions. *Dunn v. Colvin*, 607 F. App'x 264, 267-68 (4th Cir. 2015). When evaluating medical opinions,

22

the ALJ should consider "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654; *see* 20 C.F.R. § 404.1527.  "An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,'" *Dunn*, 607 F. App'x at 267 (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)), "or has failed to give a sufficient reason for the weight afforded a particular opinion," *id.* (citing 20 C.F.R. § 404.1527(d) (1998)); *see* 20 C.F.R. § 404.1527(c).

A treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record.  20 C.F.R. § 404.1527(c)(2); *see Dunn*, 607 F. App'x at 267.  Conversely, however, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.  In other words, "a treating physician's opinion is to be accorded comparatively less weight if it is based on the physician's limited knowledge of the applicant's condition or conflicts with the weight of the evidence." *Meyer v. Colvin*, 754 F.3d 251, 256 (4th Cir. 2014) (citing *Craig*, 76 F.3d at 590; 20 C.F.R. § 404.1527(c)).  Moreover, "the testimony of a non-examining physician can be relied upon when it is consistent with the record.  Furthermore, if the medical expert testimony from examining or treating physicians goes both ways, a determination coming down

on the side of the non-examining, non-treating physician should stand." *Smith*, 795 F.2d at 346 (citation omitted).  An ALJ may reject a treating physician's opinion in its entirety and afford it no weight if the ALJ gives specific and legitimate reasons for doing so.  *See Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) (per curiam) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001); *Craig*, 76 F.3d at 589-90).

A medical expert's opinion as to whether one is disabled is not dispositive; opinions as to disability are reserved for the ALJ and for the ALJ alone.  *See* 20 C.F.R. § 404.1527(d)(1). Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given.  *See id.* § 404.1527(c)(3). Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it.  *See id.* § 404.1527(c)(4); *see also Dunn*, 607 F. App'x at 268.

"Because individuals with a mental illness may experience periods during which they are relatively symptom-free, their level of functioning can vary significantly over time."  *Mabry v. Colvin*, 815 F.3d 386, 392 (8th Cir. 2016) (citing 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(D)). Here, in giving "little weight" to Dr. Jaworski's opinion (R. at 20), the ALJ considered the longitudinal evidence and noted that, according to the doctor's notes after her April 2013 opinion, Plaintiff was doing "okay" in August 2013 and that "things [were] pretty stable" in November 2013 (R. at 18, 366, 368).  Although Plaintiff maintains that the ALJ "failed to identify a single inconsistency" (Pl.'s Mem. Supp. Mot. Summ. J. 12, ECF No. 10-1), "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)).  Dr. Jaworski's progress notes before her April 2013 opinion indicate that, in December 2011 and January 2012, Plaintiff's medications were

helping him concentrate better. His depression reportedly was better by April 2012, and his anxiety had improved in July 2012. In August 2012, the therapeutic effect of Plaintiff's medications lasted six or seven hours. In September and November 2012, Plaintiff's focus and attention were "pretty good." In January 2013, Plaintiff's depression and anxiety were well controlled, and his medications continued to help maintain his attention and focus. Although Plaintiff became more anxious and depressed in April 2013, by August 2013 he had denied being depressed, and his anxiety had improved. Plaintiff reported that his symptoms were well controlled in November 2013. Further, progress notes from Plaintiff's psychotherapist at the Community Counseling Center from September 2012 to November 2013 indicated no problems with memory or his attention span despite his depression, as well as a GAF rating consistent with mild symptoms and good functioning. In any event, Plaintiff "has failed to point to *any* specific piece of evidence not considered by the Commissioner that might have changed the outcome of his disability claim." *Id.* "[I]f the decision 'is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time.'" *Bishop*, 583 F. App'x at 67 (quoting *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (Posner, J.)); *cf. Monroe*, 826 F.3d at ___, 2016 WL 3349355, at *11 (remanding because, *inter alia*, ALJ's conclusory analysis of opinion evidence as being supported or unsupported by "objective evidence," without more, rendered court unable to undertake meaningful substantial-evidence review).

Plaintiff's assertion that the ALJ, in weighing Dr. Jaworski's opinion, erred in considering his lack of hospitalizations, emergency room visits, or crisis center visits also is unavailing. *See Maddox v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-12-3125, 2013 WL 4046258, at *2 (D. Md. Aug. 6, 2013) ("[The claimant] argues that the ALJ improperly

discounted Dr. Yossif's opinion because of a lack of treatment records and because [the claimant] had never been hospitalized for her psychiatric issues.  Both assertions lack merit.  The ALJ appropriately found that Dr. Yossif's opinion was contradicted by the mental evaluations he and his staff conducted.   Further, the ALJ did not require hospitalization to find a mental disability.   He merely noted that one would expect hospitalization if [the claimant's] mental health was as severely deficient as Dr. Yossif indicated.  Thus, I find that the ALJ's discounting of Dr. Yossif's opinion is based on substantial evidence.").   In short, substantial evidence supports the ALJ's finding that Dr. Jaworski's opinion regarding Plaintiff's functional limitations was not consistent with either her progress notes or the progress notes from the Community Counseling Center.  *See Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014); *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (concluding that ALJ properly discounted treating physician's opinion as conclusory because it consisted of three checklist forms, cited no medical evidence, and provided little to no elaboration); *Burch v. Apfel*, 9 F. App'x 255, 259 (4th Cir. 2001) (per curiam) (ALJ did not err in giving physician's opinion little weight where physician's opinion was not consistent with her own progress notes); *Craig*, 76 F.3d at 590 (upholding ALJ's rejection of treating physician's opinion because record contained persuasive contradictory evidence and because treating physician's own notes contradicted his opinion).

Finally, Plaintiff contends that the ALJ failed to consider the factors cited in *Johnson* and in 20 C.F.R. § 404.1527(c) when not affording a treating source's opinion controlling weight. Pl.'s Mem. Supp. Mot. Summ. J. 10-12, ECF No. 10-1.  In this case, however, "[w]hile the ALJ did not explicitly analyze each of the *Johnson* factors on the record, the ALJ was clear that he concluded that [Dr. Jaworski's] opinion was not consistent with the record or supported by the medical evidence, which are appropriate reasons under *Johnson*" to afford a treating physician's

opinion less than controlling weight. *Bishop*, 583 F. App'x at 67. Moreover, although Plaintiff asserts that the ALJ failed to evaluate under SSR 96-2p whether Dr. Jaworski's opinion should be given controlling weight, "a finding that a physician's opinion is inconsistent with the other substantial evidence in a claimant's case record is adequate to support a determination that the opinion is not entitled to controlling weight." *Burger v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-1345, 2015 WL 467662, at *3 n.2 (D. Md. Feb. 2, 2015) (citing SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)). Thus, for the reasons stated above, Plaintiff's argument that the ALJ erred in affording little weight to Dr. Jaworski's opinion is unavailing.

## C.  Plaintiff's Ability to Perform Past Relevant Work and Other Work

Plaintiff finally asserts that the ALJ erroneously determined that he was capable of performing his past relevant work as a stock clerk (R. at 21) because the record lacks testimony from the VE that he was capable of performing such work. Pl.'s Mem. Supp. Mot. Summ. J. 13-15, ECF No. 10-1. Plaintiff also contends that, even if the VE had testified that he was capable of performing his past relevant work as a stock clerk, her testimony would have conflicted with the *Dictionary of Occupational Titles*. *Id.* at 14. As the Commissioner points out, "[h]owever, the ALJ proceeded to step five finding that there are other jobs existing in the national economy that [he] could perform. Accordingly, if the Court upholds the ALJ's finding at step five of the sequential evaluation, any error at step four is harmless." *Queen v. Astrue*, Civil Action No. TMD 10-3364, 2012 WL 1016822, at *3 (D. Md. Mar. 23, 2012); *see Tommasetti v. Astrue*, 533 F.3d 1035, 1044 (9th Cir. 2008) ("[A]lthough the ALJ erred at step four in finding that [the claimant] could perform his past work, this error was harmless because the ALJ properly concluded as an alternative at step five that he could perform work in the national and regional economies as a semiconductor assembler."); *Carter v. Comm'r, Soc. Sec.*, Civil Case No. JKB-

27

14-2581, 2015 WL 2244138, at *2 (D. Md. May 12, 2015) ("Even assuming, without deciding, that the ALJ's step four analysis was deficient, the error would be harmless since the ALJ made alternative step five findings that [the claimant] could perform work as an addresser or order clerk."). Because Plaintiff has not disputed the ALJ's determination at step five, his argument regarding any error, if any, by the ALJ at step four is unavailing.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here. Thus, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 11) is **GRANTED**. Plaintiff's Motion for Summary Judgment (ECF No. 10) is **DENIED**. The Commissioner's final decision is **AFFIRMED**. A separate order shall issue.

Date: August 29, 2016        _____/s/_____

                 Thomas M. DiGirolamo
                 United States Magistrate Judge